# Wytheville.

CONNIE M. BIVENS V. MANHATTAN FOR HIRE
CAR CORPORATION
AND
DAISY C. INGE V. MANHATTAN FOR HIRE
CAR CORPORATION.

June 18, 1931.

Present, Prentis, C. J., and Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*Allen & Jefferson* and *Chas. W. Moss,* for the plaintiffs in error.

*L. O. Wendenburg* and *George L. Oliver,* for the defendants in error.

BROWNING, J., delivered the opinion of the court.

The above cases were actions by notice of motion for judgment, in the Law and Equity Court of the city of Richmond, Part Two, filed in November, 1929, and tried in Feburary, 1930. The two cases grew out of the same occurrence. The plaintiffs were riding in the same automobile at the time of the accident and both were painfully and seriously injured. By agreement the cases were heard together, but separate verdicts were rendered for the plaintiffs, assessing the damages at $10,000.00 each.

The learned judge of the trial court delivered an opinion in sustaining the motion of the defendant to set aside the verdict of the jury and enter judgment for the defendant.

The reasoning of the judge (Hon. Frank T. Sutton) is so cogent and convincing and the authorities cited to sustain it are so pertinent and controlling that we adopt the opinion in full as that of this court. It is as follows:

"In each action there was a verdict for the plaintiff and the court is now asked to set aside these verdicts and enter up judgment for the defendant on the ground that there was no evidence sufficient to base a finding that the driver of the taxi, causing the injury, was at the time of the accident acting as the agent of the defendant corporation and within the scope of his employment.

"Stating the facts as the jury might have found them, in accordance with well settled rules, the court will accept as facts proved those statements in the evidence most favorable to the plaintiff's contention and will also accept as facts proved all reasonable and proper inferences favorable to the plaintiff that might have been drawn from the facts in evidence. It will be proper also to accept as facts proved such evidence as is not in conflict with the plaintiff's evidence and which is not inherently incredible. (*Barnes* v. *Hampton,* 149 Va., at page 744, 141 S. E. 836; *White* v. *Southern Rwy.,* 151 Va. 302, 144 S. E. 424.)

"Controlled by these rules, the facts of these cases appear as follows, as far as the question of the agency is concerned:

"The defendant was a corporation doing a taxi service business in the city of Richmond, Virginia. It owned a number of autos used in this service and had regular assigned drivers for each car. Eugene Houston (the driver of the car at the time of the accident) was regularly employed by the corporation to grease and wash cars and to clean and help about the office. He was not employed as a regular driver. He was not an officer of the corporation. At times when a regular driver was off duty, Houston was assigned to take that driver's car and make a special trip. On the date in question he was assigned to take car No. 9 (the one that figured in this accident) and answer two separate calls. Car No. 9 was assigned him that morning when he sat around the office waiting for calls. He had made two calls and returned to the office and about 3 o'clock P. M. a call came from Seventeenth and Broad streets. No officer of the defendant corporation was in the office at the time and Houston took the car and answered the call, as drivers sometimes did this when no officer was present, and it is a fair inference that such practice was permitted by the defendant corporation. As to what happened from that time until the accident only Houston testified. He testified without contradiction that he went to Seventeenth and Broad streets, but found no one waiting for him and deeming it a false call he went back toward the office or taxi stand. Arriving there and seeing several cars on the stand he did not stop but determined to go home and get some rest. Accordingly he drove back to the City Hall, paid a gas bill and started for his home at No. 23 Bowling Green road. Before reaching his home he met some friends, changed his mind and picked up his friends and started to give them a ride. It was while doing so he met with the accident involved in this suit.

"As above said, this testimony of Houston was uncontradicted, unless a contradiction could be said to arise from in-

ferences properly drawn from other facts in evidence. There was nothing in this testimony to make it incredible.

"In addition to the foregoing summary it may be said that there was no evidence that Houston had authority to go out and seek business. As an extra driver he was paid a commission by the driver for whom he supplied and his authority seemed to have been limited to sitting around the office awaiting calls and attending to those particular calls. When Houston answered the call to Seventeenth and Broad streets and returned to the taxi stand this ended that assignment or trip. It is inconsequential that he did not park his car and get out. His trip had ended. It was at this time he decided to go home and get some rest. This was a radical departure, not a mere deviation from the master's business. It was a trip to a place for a purpose authorized neither expressly nor by implication, but was one which the uncontradicted evidence shows was prohibited.

"In order to hold the defendant under the doctrine of respondeat superior it was necessary that there be facts in evidence from which the jury could fairly infer at the time of the accident Houston was engaged in and about the defendant's business and within the scope of his authority.

"The cases bearing upon the situation presented by the above facts are:

"*Kidd* v. *De Witt, Jr.,* 128 Va. 438, 105 S. E. 124; *Drake* v. *Laundry Corporation,* 135 Va. 354, 116 S. E. 668; *Crowell* v. *Duncan,* 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; *Barnes* v. *Hampton,* 149 Va. 740, 141 S. E. 836.

"In *Kidd* v. *De Witt,* the facts were as follows:

"William Scott was a regularly employed chauffeur of the defendant. He was directed by his employer to take his car and carry his employer's cook to her home in Amherst county and to bring her back. Arriving at the place of destination Scott was invited to come in and wait until the cook was ready to return. Instead of doing so he took the car and went off on a

mission of his own not connected with his master's business and while on this independent mission injured the plaintiff. He returned and took the cook home. The court said the issue was: 'Was the chauffeur at the time of the accident acting within the scope of his employment and in the discharge of his master's business?' Continuing its opinion the court said 'in determining this issue the only safe course to pursue is to revert to first principles and adhere to ancient landmarks.'

"After reviewing the authorities and principles involved the court says:

" 'Having in mind that when the accident took place the chauffeur was "on a frolic of his own;" that he was neither going for nor returning with the cook; that he was not authorized by the master either expressly or by implication to while away the period intervening between the delivery of the cook at her place of destination and the time of her return in joyriding with a friend, it must be clear upon principle and authority that the defendant is not liable as the owner of the car for the tortious acts of the servant during that period.'

"In *Drake* v. *Laundry Corporation* there was a verdict for the plaintiff which the trial court set aside and entered final judgment for the defendant. Upon appeal the trial court was reversed and final judgment entered for the plaintiff in accordance with the verdict. The sole question discussed in the opinion was the liability of the defendant under the doctrine of respondeat superior. The facts in this case were as follows: The defendant corporation operated a laundry on Main street, in the city of Norfolk. A short distance away were the stables in which it kept the horses and wagons and three of its trucks. Wilson was an employee of the defendant corporation and had been continuously in its service for eight or nine years. He was known as the 'stable man' and his principal duty was to take care of the horses and wagons and the three trucks kept at the stable. He was not one of the truck drivers, but he was, nevertheless, often called upon as a general utility man

and had several times driven trucks for the defendant from Ocean View to Norfolk. It frequently happened that a truck would be left standing in front of the laundry at the close of the day's work, and in such cases it was not unusual for him to drive the truck to the stable and put it away. He had been doing this with the knowledge and sometimes at the request of the defendant for some time prior to the accident, and was warranted in regarding it, as he says he did regard it, a part of his duty.

"On the day of the accident there was standing in front of the laundry on Main street, and headed in a different direction from that in which the stable was located, a truck which was regularly kept over night at the stable. The regular driver was busy with other matters and Wilson remarked, either to the foreman or to the driver in the foreman's presence, that he was going up Church street to get a suit of clothes before he put the truck away. The foreman offered no objection. The suit of clothes referred to was at a tailor's in a different direction from that in which it was necessary to go to reach the stable, although, as the truck could not be turned on Main street, it was necessary to drive westwardly to the end of the block and then turn. Wilson did not stop at the corner and make the turn, but proceeded to the tailor shop, which was about six and a half blocks away, and while thus proceeding the accident happened.

"The court in reversing the judgment of the trial court, at page 359 of 135 Va., 116 S. E. 668, said: 'But it is to be remembered that he had charge of the truck as the defendant's employee for the purpose of putting it away for the night. His relationship as such employee accounted for his being at the wheel, and it was both the primary and ultimate object of his trip to put the truck in the stable. It was not a case of a driver taking a vehicle for purposes of his own, either with or without authority from the owner, but a case of going out of the way for a purpose of his own on an errand which began and was

to end in the service of the owner, and the deviation from the more direct route, though made for the convenience and accommodation of the driver, appears in this case to have been made with the knowledge and acquiescence of the owner's foreman.'

"The court quoted from *Ritchie* v. *Waller*, 63 Conn. 162, 28 A. 29, 27 L. R. A. 161, 38 Am. St. Rep. 361, referred to approvingly in *Kidd* v. *De Witt*, quoted: 'In cases of deviation the authorities are clearly to the effect that a mere departure by the servant from the strict course of his duty, even for a purpose of his own, will not in and of itself be such a departure from the master's business as to relieve him from responsibility. But where the deviation is very marked and unusual, the court may determine the servant was not on the master's business at all, but on his own.'

"*Crowell* v. *Duncan*, 145 Va. page 489, 134 S. E. 576, 50 A. L. R. 1425.

"The facts of that case are somewhat similar to the case at bar. The father owned a taxi business and the son was regularly employed by him to run the taxi upon the streets of Pulaski. There was positive evidence from the father and son to the effect that on December 31st the taxi business was discontinued and the son no longer employed by the father. On January 3rd following, the son, while drinking, took the taxi out with the taxi sign still on the car, met a friend and while on a frolic of his own caused the accident involved in the suit. There was evidence that on January 3rd the son drove the witness home in the taxi and collected a fifty-cent fare from him, and that the taxi sign was on the car at that time. Another witness testified that on January 4th the son was in the car with the taxi sign displayed and on the regular taxi stand in Pulaski, and that the defendant (father) was present at the time. Other witnesses testified the son was seen driving the car with the taxi sign on it after December 31st. The court said: 'Under these circumstances the testimony of

the defendant and his son that the relationship of master and servant had terminated was not conclusive of the question. There was ample evidence to justify the conclusion reached by the jury that Bruce Crowell (the son) was still in the employ of defendant and in charge of his taxi.'

"The issue thus squarely raised was, was the son at the time of the accident 'acting within the scope of his employment or was he engaged in a frolic of his own?' In the opinion the court says this 'presents a very close question.'

"Commenting further the court said: 'The defendant was the owner of a Dodge automobile which he kept for hire, and which he turned over to his son, Bruce, with authority, and in his discretion, to transact such business as he could, and make return to him, employer and master. On the evening in question he went out upon the streets of Pulaski, where it was his custom to seek business, within business hours, with the taxi sign prominently displayed, * * * .'

"The court distinguished this case from the case of *Kidd* v. *DeWitt, Jr.,* as follows : 'In the instant case the chauffeur was not a private chauffeur acting under specific orders. As heretofore stated, he was employed as driver of a "taxi," with authority, necessarily, to take charge of the automobile, and to secure and transact such business as he could, and account to the master. He was necessarily also vested with discretion in the employment of the automobile for this purpose, and he was on the streets of Pulaski, where his duties required him to be in business hours, with the taxi sign displayed on the car.'

"The court said: 'The burden is upon the master under such circumstances to prove that the servant was not acting within the scope of his employment, and where the evidence leaves the question in doubt, it is for the jury to determine.'

"The opinion reviews a number of cases from other States, but it will be seen that they were cases of a general employment in which discretion was vested in the driver, the court pointing out that in the *Kidd* v. *DeWitt, Jr.,* case the servant

had specific authority as to the mode of dealing with the vehicle and was obliged to attend to the specific errand on which he was sent and then return to the master.

"And on page 504 of 145 Va., 134 S. E. 576, 50 A. L. R. 1425, the court uses this language:

" 'The distinction we have particularly referred to, which arises out of the difference in the authority with which a servant is vested, has been recognized in a number of decisions.' Citing cases.

"And on page 505 of 145 Va., 134 S. E. 576, 50 A. L. R. 1425, the court continues: 'We are not referring to these cases with entire approval, at least to the extent of endorsing anything in them which has a tendency to impair the force of the well established rules governing the liability of masters for the torts of servants, if they may be construed as having such tendency, but we do wish to make it clear that where discretion is vested in a servant as to the handling of any instrumentality placed in his hands by the master, *this is a weighty circumstance* for the consideration of a jury in determining whether or not the master is liable for an injury inflicted by such servant while in charge of such instrumentality—that is, whether the servant is acting within the scope of his employment.' (Italics supplied.)

"*Green* v. *Smith,* 153 Va. 675, 151 S. E. 282 (decided January 16, 1930). In this case the defendant, Sam Smith, owner of the car which was being driven by his son at the time of the accident, while being examined by counsel for the plaintiff, made statements from which the jury might fairly draw an inference—that the son was acting as his agent. Upon examination by his own attorney, Sam P. Smith made answer from which it might be said a more probable inference could be drawn that the son was acting on his own volition, and not as agent for the father, Sam P. Smith.

"And then the court said: 'Where there are several inferences which may be drawn from the evidence, though they

may differ in degree of probability, the court must adopt those most favorable to the plaintiff (upon a motion to strike or demurrer to evidence) unless they are forced, strained, or contrary to reason.'

"*Barnes* v. *Hampton,* 149 Va. page 740, 141 S. E. 836.

"The facts in this case appear to be as follows: The defendant, Stella Barnes, residing in Norfolk, was the owner of an automobile which she sometimes drove herself, but which was usually driven by Marts, the other defendant, when she was riding therein. He lived at the same place and on several occasions had driven the car for his own pleasure, or convenience, as well as when on missions for its owner. He was not employed by the defendant Barnes.

"On Sunday afternoon Marts drove the car to Ocean View, where the defendant was then stopping, and at her request brought a friend of hers to Ocean View for a social call. Barnes requested Marts to take the friend back to Norfolk and bring certain articles from her city residence by 6:00 o'clock P. M. Acting under these instructions, he took the friend back to Norfolk but did not return to Ocean View. Between 9 and 10 o'clock that night, while driving the car in another direction and in a different section of the city, caused the injury which is the result of this suit. The court said upon the question of the liability of the owner of the car:

" 'The evidence relied upon to establish the relation of master and servant, indeed the only evidence on the subject, is that of the defendant, Marts, and from their statements it seems clear that Marts in his trip to Ocean View in the car and his return with defendant's friend, was acting for and under the direction of defendant. The same witnesses that establish this fact are equally as clear and emphatic in their testimony when they say that Marts was not directed or authorized to use the car during the night of the accident and was not on any mission for the defendant at that time.

" 'We have been able to find no evidence in the record in

conflict with these statements, and not being inherently incredible the jury was unauthorized in rejecting them. The jury may have disbelieved both of these witnesses, and their testimony may have been in fact untrue, but mere beliefs or surmises are not sufficient. There must be some evidence in order to support the verdict and we are unable to find any in the record of this case.

" 'It is entirely true that the relation of master and servant being once established, places upon those attempting to escape its legal consequences the burden of showing the relation to have terminated at the time of the accident. *Crowell* v. *Duncan*, 145 Va. 489 [134 S. E. 576, 50 A. L. R. 1425].'

"The court refers to the case of *Blair* v. *Broadwater*, 121 Va. page 301, 93 S. E. 632, L. R. A. 1918A, 1011; *Cohen* v. *Meador*, 119 Va. 429, 89 S. E. 876; and *Kidd* v. *DeWitt, Jr.,* *supra,* and says:

" 'Any driving for the chauffeur's own pleasure, at times, or to places not authorized expressly or by implication by the employer, does not constitute driving for the employer, and an injury occurring while so driving will not bind the employer.'

"The line of demarcation between the *Kidd* and the *Barnes Cases,* on the one hand, and the *Crowell* and *Drake Cases,* on the other hand, is close. But the distinction seems to hinge on (1) a general employment with discretion vested in the driver beyond the mere physical operation of the car, and (2) whether the driver was at the time engaged in an unfinished undertaking for the master, and—before completion—deviates from the usual course for his own purposes, or is guilty of some unusual and radical departure not coincident in any way with the performance of the master's business.

"As in the *Barnes Case* the same witnesses that the plaintiff in the instant case used to show a relationship of master and servant are equally positive that Houston had no authority to use the car for his own purposes or for anything but special trips assigned to him.

"The instant case clearly falls within the doctrine of the *Kidd* and *Barnes Cases.* There was no general employment of Houston as a driver. He was limited to answering calls as an extra driver for an absent driver, when so assigned, and possibly, when no officer was in the office and a call came in, he by acquiescence took a car and answered that call. He had no authority, as in the *Crowell Case,* to go upon the streets and solicit business in his discretion. He had no discretion beyond the mere physical operation of the car.

"Unlike the *Drake Case,* he had not, with the acquiescence of his superior, merely deviated or departed (for his own purposes) from the most direct road to the accomplishment of his master's business. He had not, while discharging his master's business, coupled with it his own affairs. In the instant case there was no joinder of master and servant's affairs. Houston, the driver, had ended the special trip for which he (to put it most favorably for the plaintiff) had been assigned by implication. He then, against orders, for his own purposes, inaugurated a trip which ended in disaster. This was a departure from the master's affairs very marked and unusual.

"In *Drake* v. *Laundry Corporation, supra,* it was said the three situations that may present themselves are as follows :

"(1) Where the deviation is slight and not unusual, the court may, as a matter of law, determine that the servant was acting within the scope of his employment.

"(2) Where the deviation is very marked and unusual, the court may determine that the servant was not acting within the scope of his employment.

"(3) Where the facts leave the case between these two extremes, the question should be left to the jury.

"The instant case falls within the second of the above classes. The verdict of the jury was without evidence to support it on the ground of agency. The verdict will be set aside and, acting pursuant to the provisions of Code of Virginia,

section 6251, judgment will be entered for the defendant in both cases."

.To this excellent exposition of the cases in judgment we have nothing to add, save to say that since the cases were heard by this court our attention has been directed by counsel for the plaintiffs, with the knowledge of opposing counsel, to a recent decision of the Court of Appeals of the District of Columbia, in the case of *Schweinhaut, Trustee, etc.,* v. *Delia Flaherty,* 49 F. (2d) 533, as persuasive authority for sustaining their position in the cases in judgment.

The case adverted to in which the opinion was written by Justice Groner, we think, is not at all in conflict with the Virginia cases cited by the learned judge of the trial court as abundant authority for his conclusions.

The Virginia cases recognize the fact that slight disobedience to orders and slight diversions of the servant in the course of his duty will not relieve the master of the responsibility for injuries occurring through the negligence of the servant.

In the *District of Columbia Case* cited, the diversion was slight—that is, the taxi-driver, in complete charge of the taxicab for the purpose of soliciting business in the city of Washington, was going to his supper, as authorized by his master, with authority to take up paying passengers on his way. He did take up his lady friend, free of charge, and was disobeying his orders to such extent, but he was still in charge of the taxicab on his route in strict accordance with his orders and duties.

In the cases in judgment the facts were strikingly different, as is pointed out in this opinion.

We affirm the judgments of the trial court.

*Affirmed.*