# Richmond

JAMES R. BRYANT v. CARL P. BARE, ADMINISTRATOR, ETC.

May 7, 1951.

Record No. 3760.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Oren R. Lewis,* for the plaintiff in error.

*Arthur C. Stickley, II,* for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Carl P. Bare, as administrator of the estate of James C. Bare, obtained a judgment for $7,500 against James R. Bryant for the wrongful death of decedent. To reverse this judgment defendant sought and obtained this writ of error.

Defendant lives in Falls Church where he operates a restaurant. He owns a farm four miles northwest of Centerville, in Fairfax county. Approximately two weeks before the accident he employed Cecil I. Davy and his wife, agreeing to pay them by the month. Davy was empolyed to do general farm work, such as feeding the stock, milking cows, cutting wood, and other things incidental to the operation of a farm. Mrs. Davy was employed to work in the house and "help" take care of defendant's mother who was old and lived on the farm with her husband.

At approximately 6:00 p. m. on February 27, 1948, Davy, with his wife riding in the cab with him, was driving a Ford pick-up truck owned by defendant west on Highway No. 211, near Hilltop Inn, in Fairfax county. This is a dual-lane highway with a grass plot 15 feet, 7 inches wide between the east and west-bound traffic lanes, each of which is 22 feet wide. Several witnesses, riding in other motor vehicles, saw the truck zigzag several times from one side of the west traffic lane to the other, and finally veer to the left over on the grass plot where it struck and killed James C. Bare, plaintiff's decedent, and Clay Baldwin, who were walking with their backs to the approaching truck. Davy, without stopping at the scene, turned his truck to the right off of the grass plot onto the hard surface and drove on toward the farm by way of Centerville. Before reaching his destination, he drove the truck off the road into a ditch. From there he and his wife walked to the farm where Davy was arrested a few minutes later.

Defendant concedes that the evidence is ample to convict Davy of negligence, but contends that other testimony and certain physical facts prove decedent guilty of contributory negligence as a matter of law.

Without repeating the testimony upon which defendant bases this contention, we deem it sufficient to say that the jury had a right to believe that at the time of the accident decedent was walking in a path on the grass plot about 15 inches from the

curb, which path was customarily used by pedestrians going west; that decedent had no reason to believe that a motor vehicle approaching from behind would leave the paved portion of the highway and strike him. After he was struck his body was found lying on the grass plot at right angles to the paved surface, with his head extending a few inches on the pavement, and blood spots were observed on the grass and the pavement. There were marks on the grass indicating that the wheels of the truck had left the paved surface and gone over on the grass plot and back on the pavement. This view of the evidence renders it unnecessary for this court to further consider the question of contributory negligence.

Defendant's next contention is that Davy was not acting within the scope of his employment at the time of the accident and, therefore, he is not liable under the doctrine of *respondeat superior*.

There is substantial conflict in the evidence on this issue.

It is conceded that one of the stipulations in the contract of employment was that Davy should have ''every other Friday off to go to the doctor'' in Washington for medical treatment.

Defendant testified that on Thursday, February 26, he told Davy that the truck had not been inspected and should not leave the farm, but he could use it the next morning to drive to Centervile, park it there, take a bus to Washington to see the doctor and on his return drive the truck to the farm. He also testified that he did not give Davy permission to drive the truck from Centerville to his restaurant in Falls Church, nor did he request Davy to haul hay from his farm to the restaurant or to haul anything from the restaurant to the farm. The substance of his testimony is that Davy was using the truck at the time of the accident for his sole personal benefit. If this were all the testimony the jury would have been compelled to find that Davy was not acting within the scope of his employment at the time of the accident.

The evidence for plaintiff presents quite a different picture. Mrs. Davy testified: ''It was on Thursday afternoon he (defendant) was there at the place, and my husband asked him about how was he going to get into Washington to the doctor, and Mr. Bryant said, 'Well, I have some things I want you to bring in, some hay to be brought in to my restaurant. You bring the truck in to my restaurant.' And he said, 'Then I will have

a saw rig and a can of garbage put on the truck for you to take back to the farm.' ''

Pursuant to defendant's instructions, on the morning of the accident Davy and defendant's father loaded the truck with hay. Davy, with his wife riding in the cab, drove the truck by Centerville and Hilltop Inn to Falls Church, and with the hay thereon, parked it near the back door of defendant's restaurant. About 9:00 a. m. Davy and his wife took a bus to Washington. Davy was under no obligation to complete his mission in Washington or to return to the restaurant or the farm at any specific time that day. He and his wife did return to the restaurant between 12:30 and 2:00 p. m. when defendant requested Mrs. Davy to buy a box of crackers and a bottle of medicine to take to his mother who lived on his farm. She made the purchases, took them to the truck, and saw that the hay had been removed from the truck and the saw rig and can of garbage loaded thereon.

At approximately 2:00 p. m. Davy and his wife got into the truck which was then loaded with the saw rig and can of garbage to be transported to and used on the farm for defendant's benefit. Instead of taking the direct route to the farm, they drove to Tyson's Corner, which is on another highway approximately four miles from Falls Church. There Davy drank beer and his wife ate a hamburger, after which they drove several miles to Vienna, which lies in the direction of defendant's farm, but not on the direct route leading from his restaurant to it. There Mrs. Davy made purchases for herself. On leaving Vienna they drove to a near-by farm, and paid a social call on friends, one of whom gave Davy a dog. About 4:00 p. m. they arrived at Hilltop Inn, which is on the direct route from defendant's restaurant to his farm, and was the same route along which they had driven that morning in going from the farm to Falls Church. They stayed in and around Hilltop Inn for approximately two hours. Mrs. Davy testified that she kept trying to get her husband to go home (meaning defendant's farm), ''and yet he wouldn't. He was going to stay a little while longer. * * *around 6:00 o'clock it was getting dark and raining and foggy and we started home. * * *'' She also testified that her husband was ''pretty full. * * * I wouldn't say he was what you would call a drunk,'' when he started to go ''straight'' to the farm.

Defendant contends that the only conclusion that can be drawn from the foregoing evidence is that at the time of the

accident Davy had abandoned defendant's business and was not acting within the scope of his employment. In support of this contention he cites the following cases: *Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; *Kidd* v. *DeWitt*, 128 Va. 438, 105 S. E. 124; *Bivens* v. *Manhattan For Hire Car Corp.*, 156 Va. 483, 159 S. E. 395; *Drake* v. *Norfolk Steam Laundry Corp.*, 135 Va. 354, 116 S. E. 668; *Sydnor & Hundley* v. *Bonifant*, 158 Va. 703, 164 S. E. 403; *Master Auto Service Corp.* v. *Bowden*, 179 Va. 507, 19 S. E. (2d) 679; *Kavanaugh* v. *Wheeling*, 175 Va. 105, 7 S. E. (2d) 125.

These cases are in accord with the general rule, namely: that where an employee commits a tort during the time that he has temporarily abandoned the business of his employer and while on a mission of his own, the employer is not responsible for a negligent act of the employee. This is true, although the employee was using the master's property and the injury would not have been caused without the facilities afforded the employee by reason of his relation to his employer. If there is no conflict in the evidence and the deviation is slight, or if the deviation is marked and unusual, it is a question of law, but where the evidence presents a case between these two extremes, the question of whether the employee is acting within the scope of his employment becomes a question for the jury.

The law is comparatively simple. The difficulty arises in its application. The true test is not whether a particular act of an employee was done during the existence of his employment, but whether it was done in the course of his employment, or outside of it.

The evidence for plaintiff conclusively shows that on the day in question Davy was permitted to use the truck on the highway for the benefit of both himself and defendant. "An act may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person. * * * The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service. * * * So also, the act may be found to be in the service where not only the manner of acting but the act itself is done largely for the servant's purposes. Thus, where the servant

desires to make a brief detour of his own and for the purpose of expediting such trip places the employer's goods by the roadside, intending to pick them up later, the act of so placing them may be found to be within the scope of employment." 1 Agency, A. L. I., sec. 236, p. 530.

We held in *Master Auto Service Corp.* v. *Bowden, supra,* that when an employee completely departs from the service of his employer to accomplish some purpose of his own, not connected with his employment, and the accident occurs after he has completed his mission, and before he reaches the point of departure, or area or zone within which the terms of his employment require him to remain, the employer is not liable for damages inflicted by the negligent act of the employee.

It appears from a road map prepared by the State Highway Department that both Centerville and Falls Church are on Route No. 211, approximately 15 miles apart. Hilltop Inn lies between these two points, and is approximately 7 miles east of Centerville, and approximately 8 miles west of Falls Church. The distance from Falls Church to Centerville by way of Tyson's Corner, Vienna and Hilltop Inn is approximately 18 miles— that is, the route taken by Davy in going from Falls Church to Centerville and the farm was approximately 3 miles farther than the direct route between these points. The accident did not occur while Davy was on this detour from Falls Church to Hilltop, but after he had passed Hilltop and was on the direct route leading from Falls Church to Centerville and the farm. Even if Davy had temporarily abandoned the service of defendant in making the deviation, when he reached Hilltop and started on Route No. 211, toward Centerville and the farm, he was in a place where, in the performance of his duty, he should be.

In 5 Blashfield, Perm. Ed., sec. 3051, p. 212, it is said: "The majority rule, and probably the better view, is that the relation of master and servant is not restored until he has returned to the place where the deviation occurred, or to a corresponding place, some place where in the performance of his duty he should be." 35 Am. Jur., Master & Servant, sec. 557, p. 992; 12 Michie Jur., Master & Servant, sec. 97, p. 600; 122 A. L. R. 870.

The same principle is stated in 57 C. J. S., Master & Servant, sec. 574, p. 330, as follows: "* * * it has been held that a servant ordinarily will not be deemed to have returned to his master's service until he at least has reached a point in a zone

within which his labors would have been consistent with an act of deviation merely, and other authorities have held that the relation of master and servant is not restored until the servant has returned to the place where the deviation occurred or to a corresponding place, some place where, in the performance of his duty, he should be. In any case, it has been said to be clearly impossible to formulate a general rule governing all cases, and whether there has been a resumption of the master's business must of necessity depend largely on the facts of the particular case.

■ "Such resumption of the masters' business cannot be effected merely by the mental attitude of the servant. There must be that attitude coupled with a reasonable connection in time and space with the work in which he should be engaged. * * *,"

This rule was applied in *Parrott* v. *Kantor*, 216 N. C. 584, 6 S. E. (2d) 40, and *Hinson* v. *Virginia-Carolina Chemical Corp.*, 230 N. C. 476, 53 S. E. (2d) 448.

The zone of Davy's employment on the day of the accident was the direct route from Falls Church to the farm. When he left Falls Church with the intention of returning to the farm, and before he made the deviation, he was performing a service for the defendant. Defendant owned the saw rig and the can of garbage. It was his purpose to use both in the operation of his farm. Davy was obeying defendant's instructions to transport them to the farm, and in so doing he, at the time of the accident, was on the highway which defendant had instructed him to use. The mere fact that Davy was using the truck to transport himself and his wife to his home does not relieve the defendant of liability.

■ "* * * Where a servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured by his negligence; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury." 1 Shearman & Redfield on Negligence, 6th ed., sec. 147, p. 360, quoted with approval in *Drake* v. *Norfolk Steam*

*Laundry Corp.*, 135 Va. 354, 361, 116 S. E. 668; *Baker Driveaway Co.* v. *Clark*, 162 F. (2d) 181.

Defendant also contends that February 27, 1948, was Davy's "day off," and that he was under no obligation to perform any service for defendant, and that when he took his wife on a business and pleasure trip by way of Vienna and the other places named, it constituted a complete departure from, and abandonment of, defendant's business. Defendant's argument is that the evidence tending to prove that four hours later Davy was driving his truck on the direct route from defendant's restaurant to the farm is not sufficient to establish the resumption of defendant's business. As heretofore stated, Davy was under no obligation to get back to the farm at any specific hour, but he was under orders to transport the property to the farm for defendant when he did return. This he was doing at the time of the accident.

Defendant testified that after Davy had returned from Washington and before he left the restaurant he gave him the following order: "Get on the road and get that truck back up to the farm."

Mrs. Davy testified that after she reached Falls Church defendant gave neither her nor her husband any instructions as to what to do.

We find no error in the action of the trial court in submitting this issue (whether Davy was acting within the scope of his employment at the time of the accident) to the jury.

Defendant's third contention is that the court erred in instructing the jury as follows: "The Court instructs the jury that, if you believe from the evidence that the truck which killed James Coleman Bare in this case was owned by the defendant, James R. Bryant, it establishes a prima facie case that the truck was being operated by Cecil I. Davy as agent or servant of said James R. Bryant and under circumstances making the defendant, James R. Bryant, liable for his actions.

"And the Court further instructs the jury that the burden of proof is upon the defendant, James R. Bryant, to show that Cecil I. Davy was not acting within the scope of his employment at the time of said accident."

Much of the language in this instruction is taken from an instruction approved in *Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425. However, one necessary element to be

stated hypothetically was omitted—that is, the jury must believe from the evidence that plaintiff has established the existence of the employment before the burden of proof shifts to the employer to show that the employee was not acting within the scope of his employment at the time of the injury. 12 Michie's Jur., Master & Servant, sec. 195, p. 619; *Crowell* v. *Duncan, supra; Barnes* v. *Hampton,* 149 Va. 740, 141 S. E. 836; *Sydnor & Hundley* v. *Bonifant,* 158 Va. 703, 164 S. E. 403; *Kavanaugh* v. *Wheeling,* 175 Va. 105, 7 S. E. (2d) 125.

This principle is stated by Mr. Justice Buchanan for the court in *McNeill* v. *Spindler,* 191 Va. 685, 62 S. E. (2d) 13, as follows: "When the relationship of master and servant has been established, the burden is on the master to prove that the servant was not acting within the scope of his employment when he committed the tort, and if the evidence leaves that question in doubt, it is to be determined by the jury. *Crowell* v. *Duncan, supra; Bivens* v. *Manhattan For Hire Car Corp., supra.*"

██ It is conceded that the accident occurred during the existence of Davy's employment; hence the omission of this element in the instruction was not prejudicial to defendant. In addition, the jury was told in another instruction that the burden was upon the plaintiff to prove his whole case by a preponderance of the evidence.

██ It is stated in defendant's brief "The Court erred as a matter of law in granting plaintiff's instruction No. 9." The record does not show that defendant stated the grounds of his objection to this instruction either in the trial court or in this court. This is not compliance with Rule 1:8 of Court.

The judgment of the trial court is

*Affirmed.*