## Richmond

E. H. ABERNATHY, T/A, ETC. v. CHARLOTTE L. ROMACZYK.

November 28, 1960.

Record No. 5141.

Present, All the Justices.

The opinion states the case.

*W. Worth Martin* and *Douglas M. Smith* (*Martin and Smith*, on brief), for the plaintiff in error.

*Kimber L. White* (*Fred W. Bateman; Bateman and White*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

On November 17, 1959, Charlotte L. Romaczyk instituted an action at law against E. H. Abernathy, trading as Abernathy's Food Company; James Allen; Tucker F. Stepp, and Harry R. Watkins for damages on account of injuries she received while riding as a passenger in a car operated by her husband, Kazmere C. Romaczyk, which had stopped for a red signal light and was struck in the rear by Abernathy's truck driven by his employee, Allen, and also for damages for injuries she suffered resulting from an altercation which followed the accident. Stepp, a friend of Allen, was riding in the truck and he was not an employee of Abernathy. Watkins, an employee of Abernathy, was the driver of another Abernathy truck which was following the truck driven by Allen and which bumped into Allen's truck soon after it had collided with Romaczyk's vehicle causing the truck driven by Allen and the car to move forward a short distance.

Abernathy operated a portable lunch counter business, known as "Abernathy's Meals on Wheels". Trucks were equipped to render this service. A driver-salesman operated each truck. Allen and Watkins were employed by Abernathy as driver-salesmen on the two trucks involved in the present case. Customarily they would service the various military installations and industrial plants in the Newport News area during the daytime. Late in the afternoon they would meet at the west gate of Langley Field and transfer all the food and beverages remaining to one of their trucks. Then the loaded truck would service patrons at Langley Field in the afternoon and evening. The trucks were stored over-night at Hertz U-Drive It system in Newport News, and they were there replenished with supplies early each morning.

Late in the afternoon of October 3, 1958, Allen and Watkins met as usual at Langley Field. Before that Allen had picked up his friend, Stepp. Allen and Watkins concluded that they did not have sufficient supplies between them to justify working Langley Field. They decided to go to "Pops Restaurant" where Allen and Watkins had "a couple of beers" each. Stepp did not imbibe there for he had been drinking vodka earlier in the day. Allen ascended his truck, accompanied by Stepp, and drove west on Military Highway, which has four lanes, towards Newport News. Watkins followed in his truck some distance behind.

At the intersection of Military Highway and West Queen street

in Hampton, Romaczyk, who was also proceeding west on Military Highway, stopped his automobile at approximately 6 p. m. in obedience to a red signal light, and within a few seconds Allen drove his truck into the rear of the Romaczyk vehicle. Romaczyk got out of his car and walked to the rear of it and observed the bumpers of the two vehicles were resting against each other, and that no apparent damage had been done. After asking Allen "if he couldn't see where he was going" or "if he didn't see me sitting there", Romaczyk returned to his car. According to Stepp, Romaczyk asked if they couldn't see where in the "hell" they were going. When Romaczyk was in the process of re-entering his vehicle, Allen and Stepp got out of the truck and approached him. Then an argument ensued as to the cause of the accident. Allen contended Romaczyk cut in front of him, and Romaczyk maintained that he did not. Mrs. Romaczyk defended her husband's statement, and Stepp called her a liar. Romaczyk resented this remark. At this point either Allen or Stepp pulled him backward from the car, a tussle ensued between the three men without striking any blows, and in a few seconds they separated.

About that time Watkins, who was driving the other Abernathy truck, arrived at the scene. He did not bring his vehicle to a standstill and it rolled into the rear of the truck operated by Allen, pushing it and the Romaczyk car forward a short distance. Romaczyk remonstrated with Watkins for his actions. In the meantime Mrs. Romaczyk, and her brother, James Cantrell, had gotten out of the car. Watkins approached the group and said: "When you argue with my friends you argue with me" or "when you fight with my friends you fight with me." Stepp "grabbed" Romaczyk and remarked: "Come on boys, now I have got him." Suddenly another scuffle started. According to Romaczyk, "things happened so fast, I can't remember who really hit who." Mrs. Romaczyk attempted to stop the fight and was injured. She recalled being struck twice by Watkins and that Stepp twisted her arm which was in a sling due to a previous injury. She also stated that Allen participated in the fracas.

The altercation ended without the assistance of outside parties. The participants returned to their respective vehicles and departed. Romaczyk stopped at a filling station and notified police of the incident. Allen and Stepp were apprehended and taken to the police station. The Romaczyks met them there and after some interrogation Allen was released. The charges which had been placed against Stepp were withdrawn after he agreed to pay any medical bills. The

Romaczyks then drove Stepp back to Newport News in their automobile.

Stepp did not file responsive pleadings to the motion for judgment and he was adjudged in default. Rule 3:19 of the Rules of Court. The court set a time for hearing evidence without a jury to fix the quantum of damages against Stepp, and proceeded, with the jury, to consider the case as to the other defendants.

At the conclusion of plaintiff's evidence, Abernathy moved the court to strike plaintiff's evidence as to him as far as injuries she received from the assault and battery were concerned on the ground that no agency was shown between him and the co-defendants Watkins and Allen with regard to the assault and battery. The court ruled that there was no agency existing between Abernathy and Watkins at the time of the assault and struck plaintiff's evidence as to Abernathy in so far as any actions of Watkins were concerned, but declined to strike with regard to Allen's actions. The court struck the evidence against Watkins for any of plaintiff's injuries with regard to the automobile accident. It also struck the evidence as to Abernathy for any injuries plaintiff might have sustained in the automobile accident through any agency of Watkins.

Two verdicts were returned. In the first verdict plaintiff was awarded $100 damages against Abernathy and Allen for their negligence in connection with the collision. The second verdict awarded plaintiff $3,000 damages against Watkins, Allen and Abernathy for the assault and battery. Judgment was entered on the first verdict on April 10, 1959, and it is not involved here since no appeal was taken from it. On that day the court also rendered judgment in the sum of $540 against Stepp for injuries plaintiff received in the assault, which judgment was not appealed. Defendants' motion to set the second verdict aside was continued for argument.

Later the court put plaintiff on terms either to remit $750 of the verdict or submit to a new trial limited solely to the issue of damages. Plaintiff excepted on the grounds that the verdict was not excessive and defendants excepted on the grounds that $2,250 was excessive. Defendants' motion to set the verdict aside on the grounds it was contrary to the law and the evidence was overruled. Abernathy also moved to set it aside because of misdirection of the jury by the court in granting and refusing certain instructions, as well as because of the court's refusal to strike plaintiff's evidence as to him with regard to the action for damages for the assault on the part of Allen. This mo-

tion was likewise overruled. Plaintiff, pursuant to § 8-350, Code 1950, remitted $750 of the verdict and accepted the judgment of the court for $2,250 under protest, which was entered July 20, 1959. Abernathy is the only defendant to appeal from this judgment.

Abernathy designated six errors in his assignments of error. Some were abandoned at the bar of this court and we express no opinion as to them. Those not abandoned raise two questions. (1) Was Allen, Abernathy's employee, acting within the scope of his employment when he participated in the assault upon Mrs. Romaczyk? (2) Was the reduced verdict of $2,250 excessive for the injuries Mrs. Romaczyk sustained in the assault?

Mrs. Romaczyk assigned cross-error for the court's action in reducing the verdict of $3,000 to $2,250 on the ground that the jury's verdict was not so excessive as to shock the conscience of the court.

In *McNeill* v. *Spindler*, 191 Va. 685, 694, 695, 62 S. E. 2d 13, we said:

"The doctrine of *respondeat superior* rests upon the relation of master and servant. A plaintiff seeking recovery from the master for injuries must establish that the relationship existed at the time of the injuries, and also that the servant was then about his master's business and acting within the scope of his employment.

\* \* \* \* \* \*

"A master is not liable for every wrong which a servant may commit during the continuance of an employment. The master is responsible only when it can be said that the servant was in the course of his employment when the injury was done. If the servant steps aside from his master's business and is engaged in an independent venture of his own, the relation of master and servant is for the time suspended. The test is whether the act complained of was done in the course of the servant's employment, or outside of it." (Citing cases.) See *Cary* v. *Hotel Rueger, Inc.*, 195 Va. 980, 985, 81 S. E. 2d 421; 3 C. J. S., Agency, § 255, p. 187.

For a further discussion of the doctrine, see *Manuel* v. *Cassada*, 190 Va. 906, 913, 914, 59 S. E. 2d 47.

*Georgia Power Co.* v. *Shipp*, 195 Ga. 446, 24 S. E. 2d 764, is somewhat analogous to our case. There the Georgia Power Company's bus, operated by its employee, struck the left fender of the automobile plaintiff, Shipp, was driving. Plaintiff proceeded to overtake the bus and stopped alongside it. He told the driver that the bus hit his fender "back up the street". The bus driver looked at

him and drove off without answering. Plaintiff testified he did not know whether the bus driver heard him. Plaintiff again overtook the bus and stopped alongside it. The driver left the bus, approached plaintiff's car and remarked: "What the hell is the matter with you; are you drunk?" He then assaulted plaintiff. The court held that the bus driver, as a matter of law, had stepped aside from his master's business to do an act not connected with it, and that the relation of master and servant was for the time being suspended.

*Tri-State Coach Corp.* v. *Walsh*, 188 Va. 299, 49 S. E. 2d 363, involved an action instituted by Walsh against the corporation and Mooney, its bus driver, for personal injuries and property loss. Mooney stopped his bus for a red traffic light at an intersection. At approximately the same time, plaintiff stopped his car between the bus and the curb, which was to the right of the bus. When the light changed to green, Mooney proceeded to make a right turn. Plaintiff's brother, who was about to enter the car, was apprehensive the bus would strike the automobile, and he called for Mooney to stop the bus. Mooney brought it to a standstill before the turn had been negotiated, alighted and approached plaintiff who was in the driver's seat of his car. An argument ensued about their respective rights. Mooney struck plaintiff in the face, rendering him momentarily unconscious and causing his nose to bleed. Due to the blow plaintiff lost control of his automobile which was in gear. It started forward, crossed the sidewalk, and struck a building, thereby causing considerable damage to the automobile. We held the jury was justified in holding that the tort directly arose out of the prosecution of the master's business and was within the course of Walsh's employment. We said at page 304:

"It must be remembered that the altercation arose about the manner in which Mooney was operating the bus. It occurred while he was undertaking to make a right turn which plaintiff was apprehensive would bring the bus in collision with his car.

"Both drivers claimed rights on the road and the tort was inflicted by Mooney in asserting his claim and in executing service for which he was employed. The blow was struck before the turn was negotiated and it was a part of Mooney's contention that he was rightfully in position on the highway to make such turn. He insisted that the signal lights having indicated his intention to turn, therefore he was entitled to turn in front of the plaintiff's car. In furtherance of this intention and claimed right so to operate the bus though its

proximity gave concern to plaintiff, Mooney committed the tort. Both vocal insistence and physical force were used in the attempt to complete the movement of the bus undertaken by Mooney."

And on page 305, we observed:

"Had the turn been wholly negotiated into State Street, thus avoiding the real or apparent danger of collision, and Mooney had then abandoned the business of his master and committed the tort solely to gratify his personal feelings and not to accomplish or effect his insistence upon his right of movement, it would not have been within the scope of his employment; but here it was committed in the very act of negotiating the turn. * * *."

In support of her contention that Allen was acting within the scope of his employment when he participated in the assault upon her, Mrs. Romaczyk cites *Davis* v. *Merrill*, 133 Va. 69, 112 S. E. 628. There we held the master was liable for an assault committed upon a third person as a result of an incident arising out of and during the course of his employment. That case is not controlling here as the facts are distinguishable from those in the present case.

The evidence is undisputed that Mrs. Romaczyk remained in the car during the first scuffle; that she was in no way injured as a result of it, and that she did sustain injuries in the fracas which occurred after Watkins arrived at the scene. The fight was not the result of an argument as to who had the right to proceed as was the case in *Tri-State Coach Corp.* v. *Walsh, supra.* Here the accident had occurred, and the controversy, which ended in the scuffle, was over who caused the accident. By participating in the fracas, Allen abandoned the business of his master and engaged in an independent venture of his own to gratify his personal feelings, and the relation of master and servant was for the time suspended. We hold that the evidence shows as a matter of law that Allen was not acting within the scope of his employment when he participated in the assault upon Mrs. Romaczyk, and that the court erred in overruling Abernathy's motion to set the verdict aside as to him.

Having reached this conclusion, it becomes unnecessary to discuss the questions of whether the reduced verdict of $2,250 was excessive and whether the court erred in reducing the jury verdict of $3,000.

For the reasons stated, the judgment appealed from is reversed as to Abernathy, the verdict is set aside as to him, and final judgment is entered in his behalf.

*Reversed and final judgment.*