## Kensington Associates

v.

## Harry W. West

Record No. 841524

November 25, 1987

Present: All the Justices

*J. Alvernon Smith, Jr. (Samuel Baronian, Jr.; Smith, Blank, Isaacs & Hinton*, on briefs), for appellant.
*William G. Barkley (Pickford and Barkley*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

Harry W. West sued Kensington Associates (Kensington) and its employee, Willis Chittum, to recover damages for personal injuries West incurred when he was accidentally shot by Chittum. A jury returned a verdict for West in the amount of $200,000 against both Kensington and Chittum, and the trial court entered judgment on the verdict.[1] Kensington alone appeals, contending that Chittum, as a matter of law, acted outside the scope of his employment when he shot West.[2]

West was employed by United Services Industries (United Services). Kensington, owner of the former Johnston-Willis Hospital building in Richmond, contracted with United Services to renovate the hospital building. United Services provided on-site living quarters for its construction workers, including West.

Kensington employed Chittum as a security guard at the site. Chittum was responsible for protecting Kensington's property, securing the building, and preventing vandalism.

---

[1] West also sued United Services Industries. The jury, however, returned a verdict in favor of this defendant, which the trial court affirmed. West did not assign cross-error to this ruling.

[2] Although West's pleadings contain allegations of Kensington's primary negligence, the case was tried and appealed on only the *respondeat superior* theory.

While on duty, Chittum carried a pistol in a holster. Kensington's officials knew that Chittum carried a pistol and acknowledged that he was armed for Kensington's benefit. Kensington's officials had told Chittum to call the police if any trouble arose.

On various occasions before West was shot, Chittum had engaged in horseplay with Willie Archie, another United Services construction worker. On those occasions, Chittum had removed the pistol from the holster and waved it around to scare Archie.

West was shot on the night of May 13, 1981. That night, while on duty and after completing his rounds through the building, Chittum stopped in the hallway outside the workers' recreation room. He believed that Archie was in the room; Chittum, however, did not know that West was there. As Chittum was in the act of removing his pistol from the holster, the pistol discharged and the bullet struck West in the foot. Chittum testified that the shooting resulted from "horseplay." He said he pulled the pistol to have "fun" with Archie, not to protect Kensington's property. Chittum also stated that he had drunk a "couple of beers" at the time, although drinking while on duty was prohibited by Kensington. Kensington's officials had instructed Chittum not to bother the construction workers and not to go into the recreation room.

Under the doctrine of *respondeat superior*, an employer is liable for the tortious act of his employee if the employee was performing his employer's business and acting within the scope of his employment. *McNeill* v. *Spindler*, 191 Va. 685, 694, 62 S.E.2d 13, 17 (1950). Generally, an act is within the scope of the employment if (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, "and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account." *Broaddus* v. *Standard Drug Co.*, 211 Va. 645, 653, 179 S.E.2d 497, 503-04 (1971); *Cary* v. *Hotel Rueger, Inc.*, 195 Va. 980, 984, 81 S.E.2d 421, 423 (1954); *Tri-State Coach Corp.* v. *Walsh*, 188 Va. 299, 307, 49 S.E.2d 363, 367 (1948); *Davis* v. *Merrill*, 133 Va. 69, 77, 112 S.E. 628, 630-31 (1922).

When an employer-employee relationship has been established, "the burden is on the [employer] to prove that the [employee] was *not* acting within the scope of his employment when

he committed the act complained of, and . . . if the evidence leaves the question in doubt it becomes an issue to be determined by the jury." *Broaddus*, 211 Va. at 653-54, 179 S.E.2d at 504 (emphasis added); *Alvey* v. *Butchkavitz*, 196 Va. 447, 453, 84 S.E.2d 535, 539 (1954); *McNeill*, 191 Va. at 695, 62 S.E.2d at 18. *Accord Bivens* v. *Manhattan Car Corp.*, 156 Va. 483, 159 S.E. 395 (1931); *Crowell* v. *Duncan*, 145 Va. 489, 134 S.E. 576 (1926). Moreover, when the undisputed evidence shows that an employee's deviation from his employer's business is slight and not unusual, or, on the other hand, great and unusual, a court shall determine, as a matter of law, whether the employee was acting in the scope of his employment. When, however, the evidence places the case between these two extremes, the issue is for a jury. *E.g.*, *Broaddus*, 211 Va. at 653-54, 179 S.E.2d at 504; *Alvey*, 196 Va. at 454, 84 S.E.2d at 539; *McNeill*, 191 Va. at 695, 62 S.E.2d at 18; *Bivens*, 156 Va. at 495, 159 S.E. at 399; *Drake* v. *Laundry Corp.*, 135 Va. 354, 363-64, 116 S.E. 668, 671 (1923).

Applying the foregoing principles, we held in *Broaddus* that the trial court properly submitted to the jury the issue of whether a security guard had acted within the scope of his employment when he shot a person whom a policeman was attempting to subdue. 211 Va. at 655-56, 179 S.E.2d at 505-06. The evidence presented in *Broaddus* did not show as a matter of law that the guard's deviation from his assigned duties was either slight or marked and unusual. *Id.* at 655, 179 S.E.2d at 505. We said the jury reasonably could have found that the guard's shooting of the person was either an independent venture of his own or done from some impulse or emotion that naturally grew out of or was incident to an attempt to perform his master's business. *Id.* at 656, 179 S.E.2d at 506. *Accord United Brotherhood* v. *Humphreys*, 203 Va. 781, 787-88, 127 S.E.2d 98, 102-03 (1962), *cert. denied*, 371 U.S. 954 (1963) (question whether assaults committed by striking union members were personally motivated or incident to performance of strike activities directed by international union properly left to jury's resolution); *Slaughter* v. *Valleydale Packers*, 198 Va. 339, 345, 94 S.E.2d 260, 265 (1956) (reversing and remanding on ground, *inter alia*, that instruction did not permit jury to consider whether defamatory statements were made out of impulse or emotion that naturally grew out of or was incident to attempt to perform master's business); *Tri-State Coach Corp.*, 188 Va. at 308-09, 49 S.E.2d at 368 (question whether bus driver's use of "vocal

insistence and physical force" to clear a path to move his bus resulted from impulse or emotion arising out of prosecution of master's business properly submitted to jury). *Cf. Davis*, 133 Va. at 77-78, 112 S.E. at 630-32 (jury could reasonably conclude that railroad gateman was acting within scope of employment when he shot plaintiff following dispute over raising gates at late hour of night).

In a similar vein, we held in *Alvey* that conflicts in the evidence presented a jury question about whether the night manager of a service station was engaged in the owner's business when the manager accidentally shot the plaintiff while cleaning a loaded pistol. 196 Va. at 454, 84 S.E.2d at 539. The evidence concerning ownership of the gun was in direct conflict, and we said the jury reasonably could have inferred that the owner provided the manager with the gun for "protection." *Id.* at 455, 84 S.E.2d at 540. *See also Bryant* v. *Bare*, 192 Va. 238, 247, 64 S.E.2d 741, 747 (1951) (question whether employee permitted to use employer's truck for both personal benefit and employer's benefit had abandoned employer's business at time of accident properly submitted to jury); *Crowell*, 145 Va. at 505, 134 S.E. at 580 (question whether taxi driver engaged in personal or master's business one for jury's resolution where evidence showed driver, who had complete discretion in operation of owner's taxi, was operating marked taxi during business hours in usual field of operations at high rate of speed when he ran into plaintiff).

On the other hand, we upheld a trial court's ruling in *McNeill* that the undisputed evidence established a deliveryman's deviation from his employer's business so great that, as a matter of law, the deliveryman was not acting within his scope of employment at the time he collided with another vehicle. 191 Va. at 695-96, 62 S.E.2d at 18. There, the uncontradicted evidence showed that the employer had entrusted the deliveryman with a truck to run a specific errand and had given him specific instructions where to return it. The employee had disobeyed the instructions and driven the truck to another part of town to carry out a personal matter. *Id.* We there noted that a marked deviation was shown. There was a complete stepping aside from the employer's business that was in no way related to the employer's affairs and was completely contrary to the employer's instructions. *Id. Accord Master Auto Serv. Corp.* v. *Bowden*, 179 Va. 507, 511, 19 S.E.2d 679, 680-81 (1942); *Kavanaugh* v. *Wheeling*, 175 Va. 105, 117, 7 S.E.2d 125,

130 (1940); *Western Union Tel. Co.* v. *Phelps*, 160 Va. 674, 682, 169 S.E. 574, 577 (1933); *Bivens*, 156 Va. at 487, 159 S.E. at 396; *Kidd* v. *DeWitt, Jr.*, 128 Va. 438, 448, 105 S.E. 124, 127 (1920).

In *Cary*, we held as a matter of law that an argument between a hotel bellboy and two hotel guests that resulted in the bellboy's fatally shooting one of the guests did not arise out of anything connected with the hotel's business. 195 Va. at 986-87, 81 S.E.2d at 424. The undisputed evidence in *Cary* established that the argument arose over whether the bellboy owed money to the guests for activities involving the trafficking of women and liquor — conduct that was illegal and prohibited by the hotel. Thus, we held the bellboy's shooting of one of the guests "arose from an independent and personal motive on [his part] to do the act upon his own account." *Id.* at 987, 81 S.E.2d at 424.

Similarly, in *Abernathy* v. *Romaczyk*, 202 Va. 328, 334, 117 S.E.2d 88, 92-93 (1960), we reversed a court-approved jury verdict and held as a matter of law that a deliveryman was not acting within the scope of his employment when he participated in a scuffle over who had caused a traffic accident. We drew a distinction between the facts of *Abernathy* and *Tri-State Coach Corp.* on the basis that the altercation in *Tri-State Coach Corp.* arose over the manner in which the bus driver was operating the bus and over who had the right to proceed. In *Tri-State Coach Corp.*, the turn of the bus had not been negotiated and both vehicles stood close together, resulting in a stalemate about which vehicle should move first. In *Abernathy*, however, the undisputed evidence showed that after the accident occurred and as the other driver was returning to his vehicle following an inspection of the damage, the deliveryman alighted from his truck, approached the other driver before he had entered his car, and engaged in an argument that resulted in the scuffle. Thus, we held that the deliveryman's participation in the fracas was "an independent venture of his own to gratify his personal feelings, and the relation of master and servant was for a time suspended." 202 Va. at 334, 117 S.E.2d at 92.

■ We are of opinion that the present case falls within the ambit of *McNeill*, *Cary*, and *Abernathy*. Kensington's officials had given Chittum specific instructions not to "bother" the construction workers. The undisputed evidence established, however, that Chittum engaged in horseplay in an attempt to scare Archie when

he injured West. In addition, Chittum had been drinking at the time, which Kensington officials strictly prohibited.

The shooting occurred immediately after Chittum had completed his security check of the building, during which time he found no evidence of vandals or trespassers. Following the completion of the security check, Chittum's next duty was to return to his desk and let employees and construction workers in and out of the building. Instead, he tarried, intending to have a little "fun."

■ Neither the "horseplay" nor the resulting shooting was done to further Kensington's interests, but arose wholly from an independent, external, and personal motive on Chittum's part to perform an act upon his own account. When Chittum undertook to draw his pistol, he embarked upon an independent venture to satisfy his own personal desire to have "fun" and "play" around, thus suspending for a time the employer-employee relationship. We hold, therefore, that his reckless act was such a great and unusual deviation from Kensington's business that the question whether he acted outside the scope of his employment was one of law for the court rather than one of fact for the jury.

Deciding that question against West, we will reverse the judgment of the trial court and enter final judgment here for Kensington.

*Reversed and final judgment.*