# CIRCUIT COURT OF ALBEMARLE COUNTY

James Tremel et al.

v.

Floyd C. Reid et al.

## Case No. CL97-7172

BY JUDGE PAUL M. PEATROSS, JR.

### April 20, 1998

This matter comes before the Court on the demurrers filed by Defendant, Floyd C. Reid, Defendants Boy Scouts of America, and Stonewall Jackson Area Council, and by Defendant Johnny Reb Corporation. Oral argument was heard on the demurrers on April 3, 1998, and the Court took the demurrers under advisement to consult the legal authority cited.

All the demurrers are based in whole or in part on the following grounds:

1. The Motion for Judgment fails to state a cause of action by James and JoAnn Tremel for negligent infliction of an emotional distress;

2. The Motion for Judgment fails to set forth a cause of action against Defendants based on vicarious liability; and

3. The Motion for Judgment fails to set forth a cause of action against the Defendants based on an apparent authority claim.

### Facts Alleged in Motion for Judgment

Michael J. Tremel was born on December 16, 1980, and he is the son of James Tremel and JoAnn Tremel. At the time of this cause of action, Michael was an Eagle Scout, who was a member of Troop 126 of the Stonewall

Jackson Area Council of the Boy Scouts of America and was a member of that troop during the years 1995-96.

Boy Scouts of America is a Texas Corporation that is qualified to transact business in Virginia. Stonewall Jackson Area Council is a Virginia Corporation and a charter recipient of the Boy Scouts of America. Johnny Reb Corporation is a Virginia Corporation which was created to organize, sponsor, and support Troop 126.

Floyd C. Reid was the Scoutmaster who led Troop 126 until March of 1996 and was a director of Johnny Reb until at least March of 1996.

On March 22, 1996, Johnny Reb and members of Troop 126 sponsored a pancake supper at First Baptist Church in Staunton, Virginia, to raise funds for Johnny Reb and Troop 126. Reid, in his capacity as Scoutmaster of Troop 126 and a director and employee of Johnny Reb, wearing his scout master uniform, attended the pancake supper to assist in its administration. Michael Tremel and other boy scouts, at Reid's request, attended the pancake supper in class A scout uniforms and assisted in its administration.

Reid and Michael Tremel left the pancake supper in a van owned by Johnny Reb around 9:00 p.m. Reid drove to Troop 126 scout hut, where the troop had its meetings and stored its equipment. Reid and Michael unloaded items used at the pancake supper. After this task was completed, Reid drove Michael towards Michael's home in the van but drove past Michael's subdivision and into an adjoining subdivision where he parked the van. At that time, Reid sexually assaulted Michael after which Sgt. Wood of the Augusta County Sheriff's Department found Reid and Michael Tremel.

Plaintiffs allege that as a result of negligence, vicarious liability, and apparent authority, they have been damaged. In particular, James and JoAnn Tremel allege they have experienced anguish, fear, guilt, humiliation, and other emotional harm but do not allege physical injury.

### Discussion of Authority

#### A. *Plaintiff's Claim for Negligent Infliction for Emotional Distress*

Plaintiffs, in oral argument before the Court and in their briefs, have urged that there can be recovery for negligent infliction of emotional distress without proving physical injury. Plaintiffs rely on two Virginia cases for this proposition.

In the first, *Mahoney v. Becker*, 246 Va. 209 (1993), plaintiffs alleged emotional distress as a result of their daughter's molestation. The Supreme

Court assumed but did not decide that a cause of action existed in Virginia for emotional distress suffered by parents as a result of sexual abuse of a minor child. Since the court did not reach a decision on the issue, its value as precedent is in question. Plaintiffs admitted this fact in oral argument.

In the second, *Naccash v. Burger*, 223 Va. 406 (1982), plaintiffs alleged emotional distress as a result of their doctor's negligent handling of blood samples which resulted in a child born to the plaintiffs with Tay-Sachs disease. The Supreme Court stated damages for emotional distress are not recoverable unless they result directly from tortiously caused physical injury. However, the court noted exceptions to that rule.

In *Hughes v. Moore*, 214 Va. 27, 34 (1973), the Supreme Court held that where the claim is for emotional distress and physical injury resulting therefrom, recovery is permissible notwithstanding the lack of physical impact, provided there is shown by "clear and convincing evidence" an "unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury." The defendant argued, similarly to the Defendants in this case, that the plaintiffs did not prove physical injury resulting from emotional distress. Therefore, any injury the plaintiffs sustained was indirect rather than direct.

However, the court created another exception to the general rule that damages for emotional distress are not allowable unless they result directly from tortiously caused physical injury. The court allowed plaintiffs to recover damages for emotional distress. Essential to allowing recovery was the court's finding that the defendant owed the plaintiffs a duty of reasonable care and that the emotional distress was a direct result of the negligent conduct. Additionally, the court noted that the dangers of spurious claims is not present here since no one would doubt the parents' injury was real.

Plaintiffs argue that the exception in *Naccash* should apply to the facts of this case. The case at bar satisfies the two requirements (based on the pleadings) for the carve-out described in *Naccash* for negligent infliction of emotional distress (duty of reasonable care owed and emotional distress as a direct result of the negligent conduct). Additionally, it cannot be doubted that the Plaintiffs' claims in this case are real as they were in*Naccash.*

Reading the pleadings in the light most favorable to the Plaintiffs, they have stated a claim under Virginia law for negligent infliction of emotional distress even though they did not allege physical injury as a direct result of the negligent behavior. Defendant's Demurrer is overruled.

## B. *Plaintiffs' Claim for Vicarious Liability*

In deciding this issue, the Court relies only on the allegations of sexual abuse described in paragraphs 26 to 29 of the Plaintiffs' Motion for Judgment. Additional acts of abuse alleged in paragraph 35 are not considered.

Plaintiffs claim that the test for vicarious liability in Virginia is not whether the tortious act itself is a transaction within ordinary course of business of the master but whether the service itself, in which the tortious act was done, was within the ordinary course of business of the master. *Commercial Business Systems v. BellSouth*, 249 Va. 39 (1995). A similar approach was taken by the court in *Plummer v. Center Psychiatrist, Ltd.*, 252 Va. 233 (1996).

Defendants rely on the Virginia Model Jury Instruction 8.040 that states that an act is not within the scope of employment if the employee departs so far from his duties that his acts are no longer for his employer's benefit.

The trend in Virginia appears to be an expanded view of vicarious liability for even acts of employees that are motivated by personal desire and not the business purpose of the employer. The allowance for employer liability for employee actions that are clearly not within the scope of the employer's business started with *Davis v. Merrill*, 133 Va. 69, 77-78 (1922), and *Tri-State Coach Corp. v. Walsh*, 188 Va. 299, 305 (1948). In these cases, the court indicated that the test was whether the act:

(1) was an act fairly and naturally incident to the business of the employer, and

(2) was ... done with a view to further the master's interest or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise from some external, independent and personal motive on the part of the servant to do the act upon his own account.

This test was applied to exempt the act of a hotel employee for shooting an individual when the basis for the altercation arose from acts not connected with the hotel. *Cary v. Hotel Rueger, Inc.*, 195 Va. 980, 984 (1954). Additionally, a perceived faulty application of the test was the basis for dissenting opinions in both the *BellSouth* (Whiting, J., and Carrico, C.J., dissenting) and *Plummer* cases (Koontz, J., Carrico, C.J., and Compton, J., dissenting).

In the case at bar, Defendants argue that Reid was not acting in the scope of his employment. Reid was driving Tremel home after a scout function, but instead of making the proper turn to take Tremel home, he proceeded past the turn into another subdivision and molested Tremel. Plaintiffs argue that vicarious liability should attach since the job of a scoutmaster (the "service" referred to in *BellSouth* where the tortious act occurred) was within the ordinary scope of business of the Defendants. Such an open test for vicarious liability greatly expanded the liability of employers for employee torts. *McLaughlin v. Town of Front Royal*, 38 Va. Cir. 387 (1996). Determinations of the question of vicarious liability should be decided on a case-by-case basis.

This case hinges on what the "service" was in which the tortious act was done and was this service in the ordinary course of business of the employer. The facts on this issue are cloudy at best. Based on the Supreme Court of Virginia's broad interpretation of the scope of vicarious liability in *BellSouth* and *Plummer*, the issue presents a question for the jury and determination as a matter of law is not appropriate. The Defendants' demurrer is overruled.

## C. *Plaintiffs' Claim for Apparent Authority*

Plaintiffs claim that this doctrine is applicable in tort cases, relying on *Walker v. Winchester Memorial Hosp.*, 558 F. Supp. 1328 (W.D. Va. 1984). Plaintiffs argue that since Reid was an agent of the BSA, Tremel believed he was authorized to abuse him sexually.

The law of Virginia regarding apparent authority is stated in *Neff Trailer Sales v. Dellinger*, 221 Va. 367 (1980). To determine if an act is in the agent's authority, this Court must ask whether an ordinarily prudent person having a reasonable knowledge of the business would be justified in believing that the agent had the authority to perform the acts in question. Defendants suggest that no reasonable person familiar with the BSA would believe that a scoutmaster would have the authority to abuse any scout under his care. Plaintiffs argue that this question of agency is one for the jury and not one for the Court to determine as a matter of law, *Neff* and *Walker, supra*. However, in these cases, the issue was whether there was an agency relationship at all, not whether a reasonable person could believe an agent had the authority to perform an act. Therefore, under the facts of this case, whether Reid was cloaked with apparent authority depends not on a disputed question of agency but whether a reasonable person would believe he was authorized to sexually

abuse Michael Tremel. Therefore, judgment by the court as a matter of law is not prohibited, and the Court holds that Defendants' Demurrer is sustained.

August 3, 1998

This matter comes before the Court on the Demurrers filed by Defendants Boy Scouts of America (BSA) and Stonewall Jackson Area Council (SJAC) to the Amended Motion for Judgment herein filed. Oral argument was heard on the Demurrers on July 22, 1998, and the Court took the matter under advisement to consult the legal authority cited.

The Amended Motion for Judgment alleges multiple causes of action involving different constellations of plaintiffs and defendants. Specifically, the Amended Motion for Judgment contains twelve counts: Count I: Assault and Battery; Count II: Negligence of Defendant, Floyd C. Reid; Count III: Negligent Infliction of Emotional Distress by Defendant, Floyd C. Reid, against Michael; Count IV: Negligent Infliction of Emotional Distress by Defendant, Floyd C. Reid, against Mr. and Mrs. Tremel; Count V: Intentional Infliction of Emotional Distress by Defendant, Floyd C. Reid, against Michael; Count VI: Intentional Infliction of Emotional Distress by Defendant, Floyd C. Reid, against Mr. and Mrs. Tremel; Count VII: Negligence of Defendant, Johnny Reb Corporation; Count VIII: Negligence of Defendant, Stonewall Jackson Area Council; Count IX: Negligence of Defendant, Boy Scouts of America; Count X: Vicarious Liability of Defendant, Johnny Reb Corporation; Count XI: Vicarious Liability of Defendant, Stonewall Jackson Area Council; Count XII: Vicarious Liability of Defendant, Boy Scouts of America.

This letter addresses only those claims against Defendants SJAC and BSA, namely: vicarious liability for the actions of Floyd C. Reid (Counts XI-XII), which would include allegations of assault and battery, simple negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress (Counts I-VI) as well as direct liability for negligent hiring and/or retention of Reid as a scoutmaster (Counts VIII-IX).

Although Defendants BSA and SJAC demur to the entirety of the Amended Motion for Judgment, Va. Code § 8.01-273 requires that "[a]ll demurrers ... shall state specifically the grounds on which the demurrant concludes that the pleading is insufficient at law. No grounds other than those stated specifically in the demurrer shall be considered by the court." The grounds for demurrer filed by Defendants BSA and SJAC are identical. They

will be considered in roughly the order set forth in the Demurrers as filed, except that the Court will take up the issue of vicarious liability first.

*Facts Alleged in the Amended Motion for Judgment*

Michael J. Tremel was born December 16, 1980; James Tremel and JoAnn Tremel are his parents. Michael is an Eagle Scout who was a member of Troop 126 of the Stonewall Jackson Area Council of the Boy Scouts of America in 1995 and 1996. The chartered organization which sponsors Troop 126 is Johnny Reb, a corporation created to organize, sponsor, and support Troop 126. Floyd C. Reid was scoutmaster of Troop 126 between 1967 and March 1996.

Officers and directors of Johnny Reb selected and appointed Reid to serve as scoutmaster on an annual basis from 1967 to 1996. SJAC and BSA approved Reid's selection and appointment as scoutmaster of Troop 126 every year from 1967 through 1996. BSA's bylaws give BSA the power to decide if any person, including Reid, had the moral, educational, and emotional qualities necessary for a leadership position in scouting. In March 1996, BSA and SJAC exercised this power to dismiss Reid from scouting and Troop 126 following his arrest on the charge of unlawfully and feloniously knowing Michael Tremel by or with the mouth, in violation of Va. Code § 18.2-361. Reid pleaded guilty to this felony on August 21, 1996.

In October 1986, Reid was indicted for contributing to the delinquency of a minor based on the allegations of a scout and member of Troop 126, Tracy Shircliff, that Reid sexually assaulted him while he was sleeping in a van during a scout camping event. In February 1987, Reid was tried in the Circuit Court of Augusta County and found not guilty. In 1986 and 1987, Troop 126, Johnny Reb, SJAC, and BSA knew or should have known of Reid's indictment, trial, and the details of Shircliff's allegations. These defendants performed no independent investigation of the incident or of Shircliff's allegations but continued on an annual basis to approve and authorize his selection and appointment as scoutmaster from 1986 to 1996.

In June 1992, Michael and Mr. Tremel became affiliated with Troop 126, Michael as a scout and Mr. Tremel as an assistant scoutmaster. Thereafter, Reid targeted Michael as a potential sexual victim/object for his sexual gratification and deliberately ingratiated himself with the Tremel family in order to make Michael vulnerable to being coerced into sexual acts and to win the trust of Mr. and Mrs. Tremel for the purpose of gaining unfettered access to Michael.

In the early spring of 1995, while performing maintenance in the Troop 126 scout hut on a weekend, Reid grabbed Michael by the shoulder, unzipped Michael's pants, and began fondling his genitals. During the molestation, Michael was under the coercion and duress of Reid. Over the balance of 1995 and through March 1996, Reid sexually molested Michael on more than thirteen separate occasions in the scout hut, on scout camping trips, and in the scout van. During many of the camping trips on which Reid molested Michael, Reid and Michael shared a tent, in violation of scouting regulations that no adult leader ever be alone with a scout.

On March 22, 1996, while taking Michael home in the scout van following a scout fundraiser, Reid drove past the entrance to Michael's subdivision and into the West Hill subdivision where he parked the van. Reid fondled and sodomized Michael in the van while parked in the West Hill subdivision. On this and every other prior occasion when Reid sexually molested him, Michael was under coercion and duress and at no time did he voluntarily participate in these molestations. When an officer discovered Reid and Michael in the van, Michael was naked from the waist down. Reid was arrested and later pleaded guilty to the felony of knowing Michael by or with the mouth as described above.

As a result of Reid's molestations, Michael has suffered severe and intense emotional distress and physical injury, and Mr. and Mrs. Tremel have suffered severe and intense emotional distress. All have received psychological treatment for these injuries and are expected to require more such treatment in the future.

*Discussion of Authority*

A. *Vicarious Liability*

By Letter Opinion of April 20, 1998, this Court overruled Defendants' Demurrer to the original Motion for Judgment on the issue of vicarious liability. The analysis focused on the scope of employment limitation to respondeat superior as applied to the single incident in the scout van on March 22, 1996, which ended in Reid's arrest. Citing *Commercial Business Systems v. BellSouth*, 249 Va. 39 (1995), and *Plummer v. Center Psychiatrists*, 252 Va. 233 (1996), the Court noted that the trend in Virginia appears to be toward an expanded view of vicarious liability in which personal motive for a tortious act will not of itself decide the inquiry. The Court concluded that the facts relating to the service out of which the tortious

act arose were, at the demurrer stage, "cloudy at best," and therefore presented a jury question. *Supra.*

As a preliminary matter, Defendants BSA and SJAC challenge, as they did not in the earlier Demurrer, the existence of a master-servant relationship between Reid and these defendants. "In reviewing the sufficiency of a motion for judgment on demurrer, the trial court is required to consider as true all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the facts alleged." *Luckett v. Jennings*, 246 Va. 303, 307 (1993). So construed, Plaintiffs' allegations regarding Defendants' power of selection, termination, and control over the means of Reid's service are sufficient to survive demurrer on this issue.

Defendants next argue that Plaintiffs' allegations of vicarious liability are vague. Plaintiffs have alleged that Defendants BSA and SJAC are "vicariously liable for the molestations of Michael by Reid." Am. Mot. J. ¶¶ 123, 131. Defendants argue that Plaintiffs' failure to specifically allege vicarious liability for the individual claims of assault and battery, negligence, and negligent and intentional infliction of emotional distress should bar those claims. The Court finds such detail unnecessary since those counts are clearly derivative of "the molestations of Michael by Reid."

Finally, Defendants contend that the Amended Motion for Judgment provides new facts, sufficient to decide the scope of employment issue as a matter of law. Specifically, the Amended Motion for Judgment alleges:

> 24. During and after June 1992, Reid deliberately ingratiated himself with the Tremel family. Reid visited the Tremel household and solicited Mr. Tremel's assistance repairing scout vehicles. Reid frequently visited the Tremels at their home and took meals with the Tremels. Reid frequently visited the Tremels around holidays. Reid gave Michael presents, gifts of money, and other things and also showed him attention and affection, all to obligate Michael to him and make Michael vulnerable to lowering and losing his inhibitions around Reid and being coerced into sexual acts. By all of this conduct, Reid targeted Michael as a potential sexual victim/object for his sexual gratification.

Am. Mot. J. ¶ 24. Additionally, the Amended Motion for Judgment alleges that Reid's first touching of Michael occurred in the following manner:

27. In the early spring of 1995, on a weekend, Reid and Michael were working in the Troop 126 scout hut. Reid and Michael often performed maintenance on the scout hut, including mowing the grass.

28. While they were working, Reid grabbed Michael by the shoulder, unzipped Michael's pants, and began fondling his genitals.

29. During the molestation, Michael was under coercion and duress of Reid, an authority figure whom the fourteen-year-old boy respected and trusted.

Am. Mot. J. ¶¶ 27-29. Where the original Motion for Judgment alleged only that "Reid fondled and sodomized Michael in the van while parked in the West Hill subdivision" and that "Reid had sexual contact with Michael on several occasions in 1995 and 1996," Mot. J. ¶¶ 29, 35, the Amended Motion for Judgment clarifies each of these alleged incidents as "molestation" and specifically alleges that "Michael was coerced by Reid and under duress and did not voluntarily consent to Reid's sexual molestations." Am. Mot. J. ¶31.

Accepting these allegations as pleaded, the Court finds that such facts do indeed permit determination as a matter of law since regardless of what the "service" was, out of which the tortious acts arose, such service could not be construed as within the ordinary course of the business of scouting. The original allegations concerning the incident in the van left open the possibility that Reid, out of some concern for Michael as a scout or as part of some conceivable, if implausible, attempt as a scoutmaster to help Michael, may have touched Michael in some manner which then led to the alleged sexual misconduct. Such arguments have been made, for example, in the counseling context. *See Plummer*, 252 Va. at 240 (Koontz, J., Carrico, C.J., and Compton, J., dissenting) ("respondeat superior does not apply even though counselor maintained sexual intercourse 'was part of his therapy'.") (*citing Sharples v. State*, 793 P.2d 175, 176-77 (Haw. 1990)). The facts alleged in the Amended Motion for Judgment admit no such possibility.

A scarcity of facts can be critical on demurrer. In *Plummer*, a divided Supreme Court held 4 to 3 that the trial court had erred in ruling, as a matter of law on demurrer, that a psychologist who had sexual intercourse during therapy with a patient was acting outside the scope of his employment. 252 Va. at 234-35. In setting forth the relevant law, the majority in *Plummer* began by stressing that the burden is on the defendant employer "to prove that the [employee] was *not* acting within the scope of his employment when he committed the act complained of, and ... if the evidence leaves the question in doubt it becomes an issue to be determined by the jury." *Id.* at 235 (*quoting*

*Kensington Assocs. v. West*, 234 Va. 430, 432-33 (1987)). The application of this burden at the demurrer stage creates a significant hurdle for a defendant since only the plaintiff's allegations and the reasonable inferences therefrom are considered at this stage. Noting the majority decision in *BellSouth* that "[the employee's] willful and malicious acts [of negotiating a self-serving contract] were committed while [he] was performing his duties as BellSouth's contract negotiator and administrator and in the execution of the services for which he was employed ... [and] therefore [ ] that the evidence presents a jury issue whether [he] acted within the scope of his employment when he committed the wrongful acts," *id.* at 237 (*quoting BellSouth*, 249 Va. at 46), the majority in *Plummer* reasoned:

> According to the plaintiff's allegations, [the psychologist's] act was committed while he was performing his duties as a psychologist in the execution of the services for which he was employed, in this instance, counseling and therapy. Additionally, [his] education, experience, and knowledge of the plaintiff, who was depressed and had suicidal ideations, enabled him "[to overcome] her will so that she was unable to act with volition."

252 Va. at 237. Then, despite the objections of three justices that a "seduction" could not have been intended to advance the employer's business, *id.* at 240 (Koontz, J., Carrico, C.J., and Compton, J., dissenting), the majority concluded that "at this stage of the proceedings, there simply are not sufficient facts which would permit us to hold, as a matter of law, that the defendant has met its burden of showing that its employee was *not* acting within the scope of his employment." *Id.* at 237.

In overruling the demurrer on the original Motion for Judgment, the Court possessed insufficient facts relating to the particular transaction out of which Reid's tortious acts arose. Since the moral foundation of the agency relationship consists of one party acting on behalf of another, courts have long struggled with the extension of respondeat superior to intentional torts. *See Henry Myers & Co. v. Lewis*, 121 Va. 50 (1917). Indeed, the majority of jurisdictions continue to limit vicarious liability for an intentional act, particularly when it is criminal, unless, as set forth in the Restatement (Second) of Agency § 228(1)(c) (1958): "it is actuated, at least in part, by a purpose to serve the master."[1] *See, e.g., Flynn v. Gold Kist, Inc.*, 181 Ga.

---

[1] The Restatement test for scope of employment is set forth in § 228: "(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed

App. 353 S.E.2d 537 (1987); *Gibbs v. Air Canada*, 810 F.2d 1529 (11th Cir. 1987), *rehearing denied en banc*, 816 F.2d 688 (11th Cir. 1987); *Bremen State Bank v. Hartford Accident & Indemnity Co.*, 427 F.2d 425 (7th Cir. 1970). Nevertheless, to avoid "enabling principals largely to avail themselves of the frauds of their agents, without suffering losses or incurring liabilities on account of them," *Lewis*, 121 Va. at 65 (*quoting Mackay v. Commercial Bank*, L.R. 5 P.C. 394), Virginia courts have shifted their focus up one level of abstraction from the tort itself to analyze the transaction or service out of which the tort arose. Thus, although a principal "has not authorized the particular act, but has put the agent in his place to do that class of acts," *id.* (*quoting Barwick v. English Joint Stock Co.*, L.R. 2 Exch. 259), "the master or principal is liable for the *tortious manner* in which a transaction is conducted or a service is performed, entrusted by the former to the latter to be conducted or performed for him in a non-tortious manner." *Id.* at 71. And hence:

> the test of the liability of the master for the tortious act of the servant is not whether *the tortious act itself* is a transaction within the ordinary course of the business of the master, or within the scope of the servant's authority, but whether *the service itself, in which the tortious act was done*, was within the ordinary course of such business or within the scope of such authority.

*BellSouth*, 249 at 44 (*quoting Davis v. Merrill*, 133 Va. 69, 77-78 (1922)).

Examples of this shift in focus to the "service" from which the tortious act arose are provided in three cases relied upon in *BellSouth*: *Davis, supra*; *Tri-State Coach Corp. v. Walsh*, 188 Va. 299, 305-06 (1948); and *Cary v. Hotel Reuger, Inc.*, 195 Va. 980, 984 (1954). In *Davis*, a railroad gateman became incensed when a motorist requested he raise the gate at night and, after raising the gate, shot at the vehicle and killed one of its occupants. Noting that "the parties in the automobile had no communication with the gateman, personally, but only as the servant of the defendant," *Davis*, 133 Va. at 78, the Court stated:

---

to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpected by the master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228 (1958).

the contention arose over the raising of the gates at a late hour of the night, a matter admittedly within the scope of the gateman's employment and duty, and as an immediate result thereof, the gateman shot and killed the deceased. The two acts constitute parts of one and the same transaction.

*Id.* at 77.

In *Tri-State Coach Corp.*, an altercation arose between a bus driver and motorist over the right of way which led to an assault on the motorist. The Court reasoned:

Had the turn been wholly negotiated into State Street, thus avoiding the real or apparent danger of collision, and Mooney had then abandoned the business of his master and committed the tort solely to gratify his personal feelings and not to accomplish or effect his insistence upon his right of movement, it would not have been within the scope of his employment; but here it was committed in the very act of negotiating the turn. It was part and parcel of Mooney's insistence and contention that he was properly operating the bus and intended to insist upon his rights in the highway. Because his demands were physical and emphatic renders it no less in furtherance of the master's business.

188 Va. at 305.

Finally, in *Cary*, a hotel bellman was in an elevator, on his way to deliver ice to a guest's room, when two acquaintances accosted him about a personal debt he allegedly owed them. An argument arose, and the bellman shot and killed one of the acquaintances. The Court held:

It is true that the fatal shooting took place in the hotel's elevator while Frazier was operating it, but the shooting did not arise out of this service. The injury was not caused by any defect in the elevator; or its faulty operation; or by an incompetent operator. Nor did the shooting result from any argument over the manner of the operation. The elevator merely happened to be the location where the shooting occurred.

195 Va. at 986-87.

It is important to note that in abstracting away from a narrow focus on the tortious act in the examples above, the Supreme Court did not equate the

"service" in which the employee was engaged with the mere employment itself. Such an equation would extend employer's potential liability to any act arising out of an employee's presence on the job and effectively render the scope of employment limitation no limitation at all. This is not the law in Virginia. In *Plummer*, both the majority and dissent cite *McNeill v. Spindler*, 191 Va. 685 (1950). In ruling that a truck driver's personal errand was "in no wise related to the defendant's affairs and completely contrary to [his] instruction," the Supreme Court in *McNeill* clearly stated:

> A master is not liable for every wrong which a servant may commit during the continuance of an employment. The master is responsible only when it can be said that the servant was in the course of his employment when the injury was done. If the servant steps aside from his master's business and is engaged in an independent venture of his own, the relation of master and servant is for the time suspended.

*Id.* at 695. Thus, the railroad in *Davis* was not liable simply because its gateman was at his post in his "service" as a gateman. Rather, the Court specifically focused on whether the "transaction" from which the tortious act arose, namely, raising the gate, was within the scope of his duties. 133 Va. at 77. Similarly, the Court in *Tri-State Coach Corp*. specifically stated that the bus company would not have been liable for the assault of its bus driver had it not been "part and parcel" of his attempt to further his master's business in negotiating the turn. 188 Va. at 305. The shooting in *Cary* occurred in the hotel's elevator by its uniformed bellman during the operation of the elevator and in the course of his errand to bring ice to a hotel customer. Nevertheless, the Supreme Court rejected the plaintiffs' contention that "the service of operating the elevator renders the employer liable for an injury inflicted by such employee as a result of a personal dispute." 195 Va. at 987.

In the case at bar, Plaintiffs urge the Court to consider the scope of Reid's employment to include all acts allegedly committed by Reid "in his capacity as a scout master." Pls' Mem. Opp'n Dem. at 17. Plaintiffs emphasize that on at least the occasion of Reid's arrest, "Reid, dressed in his scoutmaster uniform, was returning equipment from a Boy Scout fundraiser to the scout hut in a scout van." *Id.* With regard to that specific incident, if Reid's torts had involved an accident arising from his driving of the van or even an assault connected with returning the equipment or protecting the scout hut, such a description of Reid's "service" may have been sufficiently defined to form the basis of a meaningful analysis under Virginia law. However, on the facts of

the original Motion for Judgment, the Court was unwilling to abstract up to "scouting" or "camping" or even "driving the scout van after a scout function," since this would have held Reid's principals potentially liable for all his acts as scoutmaster. Instead, the Court held that the facts at that time were cloudy, thereby leaving open the possibility that further facts might confirm the existence of a jury question regarding the "service" out of which Reid's contact with Michael arose.

An example of facts relating to sexual misconduct which would have been sufficient to have defined a transaction for Virginia's scope of employment analysis is presented in the California case of *Cordts v. Boy Scouts of Am., Inc.*, 252 Cal. Rptr. 629 (Ct. App. 1988). In *Cordts*, the plaintiff proffered allegations that:

> part of Van Aspern's duties as a scoutmaster included instruction in sex education and that the acts of molestation occurred while Van Aspern instructed the plaintiff's sons "on sexual education out of the Scout Manual at scout meetings in a back room while the Scout Leader and child were out of the presence of the other Scouts."

*Id.* at 633. The court in *Cordts* affirmed the trial court's dismissal on demurrer, concluding that "we see no relationship between sex education and sexual misconduct of the kind alleged here," *id.* at 636, and "[a] Boy Scout leader's sexual molestation of a Boy Scout constitutes a substantial deviation for personal purposes from his duties and is therefore not incidental to his agency." *Id.* at 633.

Recognizing that the Amended Motion for Judgment alleges more than thirteen separate incidents of "molestation" and that the specific transactions from which each of them allegedly arose remain poorly defined at the demurrer stage, the Court nevertheless finds that regardless of what future facts might be forthcoming, no "service" legitimately within the scope of duties for which Reid was engaged, conducted in the ordinary course of the business of scouting, could give rise to the deliberate, calculated, targeted, and coerced molestations alleged. Unlike in *Plummer*, where, given the intimate nature and one-on-one setting of professional therapy, additional facts might have allowed a jury to conclude that the psychologist's tortious actions in some way grew out of a service for which he was engaged, the Plaintiffs in this case acknowledge and specifically allege that BSA prohibits (and thus the duties of scouting do not include) any instance of "an adult leader ever being alone with a scout." Am. Mot. J. ¶ 13. In clarifying the "service" from which

Reid's alleged tortious actions arose, the Court agrees with the Defendants that "[b]ecause Reid and Michael Tremel were alone on every occasion on which sexual molestation allegedly occurred, on each of these occasions, Reid had stepped aside from any duties required of him as a scout volunteer." Defs.' Rebuttal Br. Supp. Dem. at 10.

The majority in *Plummer*, citing *BellSouth* for a more detailed discussion of the relevant principles, excerpts a portion of *Tri-State Corp.*, 188 Va. at 305-06, quoted in *BellSouth*, 249 Va. at 45, to summarize "the test that we believe is applicable here":

> The courts ... have long since departed from the rule of non-liability of an employer for willful or malicious acts of his employee. Under the modern view, the willfulness or wrongful motive which moves an employee to commit an act which causes injury to a third person does not of itself excuse the employer's liability therefor. The test of liability is not the motive of the employee in committing the act complained of, but whether that act was within the scope of the duties of employment and in the execution of the service for which he was engaged.

*Plummer*, 252 Va. at 236. The use of this quotation in conjunction with the controversial conclusions of the *BellSouth* and *Plummer* majorities in the face of cogent dissents renders the role of motive somewhat uncertain in Virginia's current scope of employment analysis. Therefore, this Court has deliberately avoided basing its ruling on a finding of personal motive, although for reasons offered below, the Court believes that motive continues to provide a viable alternative ground for dismissal.

The ruling of this Court, based on the abbreviated "test" quoted in *Plummer* above, is that, as a matter of law, the facts alleged in the Amended Motion for Judgment cannot have arisen from within the scope of the duties of Reid's employment, in the execution of any service for which he was engaged. Furthermore, under the principle cited in *McNeill* and applied as recently as 1987 in *Kensington Assocs.* (both cases cited with approval by the majority in *Plummer*), the Court finds that Reid's action of arranging to be alone with Michael marked a great and unusual deviation from the business of scouting whereby he engaged in an independent venture of his own. Therefore, the alleged relation of master and servant was for that time suspended. *See Kensington Associates*, 234 Va. at 433 ("when the undisputed evidence shows that an employee's deviation from his employer's business is slight and not unusual, or, on the other hand, great and unusual, a court shall

determine, as a matter of law, whether the employee was acting in the scope of his employment"); *see also Broaddus v. Standard Drug Co.*, 211 Va. 645, 653 (1971); *Abernathy v. Romaczyk*, 202 Va. 328, 332 (1960); *Alvey v. Butchkavitz*, 196 Va. 447, 454 (1954); *Cary*, 195 Va. at 984; *McNeill*, 191 Va. at 694-95; *Tri-State Coach Corp.*, 188 Va. at 308, *Bivens v. Manhattan Car Corp.*, 156 Va. 483, 495 (1931).

Finally, in the opinion of this Court, the primary point originally being made in the discussion of the "modern view" quoted above related to the shift in focus from the tort to the transaction. Thus, while the motive for the tort would cease to be decisive, the motive for the service would not. Indeed, the same quotation from *Tri-State Coach Corp.* from which the above is drawn continues: "[t]his does not mean that the motive which actuated the employee is of no importance. Under some circumstances, at least, the motive which actuated the employee may be of prima facie importance." 188 Va. at 306. Significantly, even under the "modern view," motive continued to be an important element of the definition of "scope of employment" advanced in *Tri-State Coach Corp.*, *id.* at 307, and quoted in numerous subsequent cases, including *BellSouth*, 249 Va. at 51 (Whiting, J., and Carrico, C.J., dissenting), *Kensington Assocs.*, 234 Va. at 432, *Broaddus*, 211 Va. at 653, and *Cary*, 195 Va. at 984:

> Generally, an act is within the scope of the employment if (1) it was performed or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the master's interests, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business," and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account."

*Kensington Assocs.*, 234 Va. at 432 (citations omitted).

As an alternative grounds for its ruling, the Court finds that the facts alleged in the Amended Motion for Judgment conclusively establish that Reid's tortious actions were deliberate, planned, and arose wholly from some external, independent, and personal motive on Reid's part to do the acts upon his own account. No instance of coerced molestation involving an adult leader purposely alone with a scout can, even mistakenly or ill-advisedly, be with the intent to further the interests of scouting. Nor can such arise from some impulse or emotion that was the natural consequence of an attempt to do the

business of scouting. To subject the Boy Scouts of America and the Stonewall Jackson Area Council to the strict liability of respondeat superior for actions unconnected with any service on their behalf would represent a gross departure from the moral foundation of agency law and an abuse of even the most liberal reading of Virginia's scope of employment law.

## B. *Claims by Mr. and Mrs. Tremel*

Having held that Defendants SJAC and BSA are not vicariously liable for Reid's alleged molestations of Michael, the Court will dismiss all Counts against these Defendants which do not allege the direct negligence of these Defendants. Thus, the Court finds it unnecessary to address the allegations of assault and battery (Count I), negligence of Reid (Count II), negligent infliction of emotional distress against Mr. and Mrs. Tremel (Count IV), and intentional infliction of emotional distress against Mr. and Mrs. Tremel (Count VI), as brought by Plaintiffs, Mr. and Mrs. Tremel.

The remaining potential causes of action brought by Mr. and Mrs. Tremel are for negligent hiring and/or retention of Reid. While Defendants concede that Michael Tremel has stated a claim for negligent hiring, they argue that because the Defendants owed no legal duty to the parents, they should not have a separate claim for negligent hiring against these defendants; Defendants assert that Virginia does not recognize an independent tort of negligent retention.

### 1. *Duty owed by Defendants SJAC and BSA to Mr. and Mrs. Tremel*

In *J. v. Victory Tabernacle Baptist Church*, 236 Va. 206 (1988), the plaintiff alleged that her ten-year-old daughter had been repeatedly raped and sexually assaulted by an employee of the defendant church. The mother sued the church and pastor, alleging they negligently hired the man for duties that encouraged him to come into contact with children despite the fact that they "knew, or should have known, that [he] had recently been convicted of aggravated sexual assault on a young girl, that he was on probation for that offence, and that a condition of his probation was that he not be involved with children." *Id.* at 207. The defendants demurred, contending, *inter alia*, that the mother failed to allege an "actionable legal duty." *Id.* at 208. The trial court sustained the demurrer, but the Supreme Court reversed, reaffirming the existence of an independent cause of action in Virginia for negligent hiring and specifically distinguishing it from respondeat superior *Id.* at 209-11.

The first element of any claim in tort is a legal duty owed by the defendant to a specific plaintiff. *Marshall v. Winston*, 239 Va. 315, 318-19 (1990). Thus, the distinction between the duty owed a child and any separate and distinct duty owed the victim's parents is material. By its holding, the Court in *Victory Baptist* appears to assume an actionable duty of the church to the mother but does not address its grounds. The Court in *Victory Baptist* relied almost exclusively on authority involving charitable hospitals, where the suits were all brought by or on behalf of patients of the hospital. *See Hill v. Memorial Hosp., Inc.*, 204 Va. 501 (1963); *Memorial Hosp. v. Oakes, Adm'x*, 200 Va. 878 (1959); *Norfolk Protestant Hosp. v. Plunkett*, 162 Va. 151 (1934); *Weston's Adm'x v. St. Vincent, etc.*, 131 Va. 587 (1921). The single additional authority cited in *Victory Baptist* was the case of *Davis v. Merrill, supra*, in which the railroad clearly owed a duty to motorists who were themselves directly engaged in the use of the railroad's gate crossing. It appears to this Court that the probable basis of the church's duty toward the mother in *Victory Baptist*, insofar as it was brought independently of the victim and not on her behalf, was the fact that the mother herself appears to have been a parishioner of the church and therefore in a direct relationship with the church.

Plaintiffs in the case at bar argue that "one to whom a minor has been entrusted has assumed a duty to that minor's parents not to assault the child sexually." Pls' Mem. Opp'n Dem. at 8 (*quoting John Doe v. Cuomo*, 649 A.2d 266, 273 (Super. Ct. Conn. 1994)). Defendants point out that *Cuomo* appears to be unique in its holding, has never been cited in Virginia, and, if applied as Plaintiffs urge, would run contrary to numerous limitations which courts place on parental attempts to bring independent claims following injuries to their children. These include requirements of physical injury and "zone of danger" as per *Hughes v. Moore*, 214 Va. 27 (1973), and the Restatement (Second) of Torts § 313(2), *El-Meswari v. Washington Gas Light Co.*, 785 F.2d 483 (4th Cir. 1986), the requirement of a "direct, rather than an indirect, injury" which is elemental to any negligence claim, *Naccash v. Burger*, 236 Va. 406, 414 (1982), and the "physical presence" requirement of the Restatement (Second) of Torts § 46(2)(a), applied in *Harris v. USAA Cas. Ins. Co.*, 37 Va. Cir. 553 (1994), and in a majority of jurisdictions, including those surrounding Virginia, *see, e.g., Johnson v. Caparelli*, 625 A.2 668 (Pa. 1993); *Homer v. Long*, 599 A.2d 1193 (Md. App.) *cert. denied*, 604 A.2d 444 (Md. 1992); *Courtney v. Courtney*, 413 S.E.2d 418 (W. Va. 1991); *Briggs v. Rosenthal*, 327 S.E.2d 308, 312 (N.C. App.) *cert. denied*, 332

S.E.2d 479 (N.C. 1985). Dfs' Rebuttal Br. Supp. Dem. at 6 (*citing* Dfs' Mem. Supp. Dem. at 8-19).

Defendants contrast *Cuomo* with *Martin v. United States*, 984 F.2d 1033 (9th Cir. 1993), which rejected a mother's argument that because she had entrusted the care of her child to the daycare center, the center stood *in loco parentis* and owed a duty directly to her when her child was abducted and raped. The Ninth Circuit held that although a daycare center had a duty to the child not to act negligently in her supervision, the center had no duty to the child's mother to supervise the child. *Id.* at 1036. Defendants note a similar reasoning by the Fairfax Circuit Court in *Atkinson v. Kaiser Foundation Health Plan*, 23 Va. Cir. 532 (1989), holding that doctors owed no legal duty to parents or siblings of a child injured by medical malpractice since there was no physician-patient relationship with the parents or siblings. The Court finds that application of an entrustment theory in this context would be contrary to the weight of authority and create a novel cause of action by parents against any organization asked to teach, care for, or supervise children, including schools, hospitals, and charitable organizations.

The Court finds that the Defendants SJAC and BSA owed no legal duty to Mr. and Mrs. Tremel since the injuries they complain of grow out of the relationship of these Defendants to their son Michael and not to them directly. Thus, while Michael's claim for negligent hiring may go forward, Defendant's demurrer is sustained as to any independent claim of negligent hiring brought by Mr. and Mrs. Tremel. Additionally, while the Court finds the facts of this case appropriate for the recognition of an additional and independent cause of action for negligent retention, the absence of legal duty owed by these Defendants to Mr. and Mrs. Tremel is fatal to that claim as well. Therefore, the Court finds that Mr. and Mrs. Tremel have failed to state any cause of action against these Defendants.

## C. *Claims by Michael Tremel*

As above, the finding that Defendants SJAC and BSA are not vicariously liable for Reid's alleged molestations of Michael renders moot Michael's claims of assault and battery (Count I), negligence of Reid (Count II), negligent infliction of emotional distress (Count III), and intentional infliction of emotional distress (Count V) as brought against these defendants. Defendants have conceded and the Court holds that Michael's claim for negligent hiring may go forward, and Defendants' Demurrers are overruled as to that claim. Additionally, for reasons set forth below, the Court finds the

facts alleged in the case at bar present an appropriate occasion for this Court to join other circuits in the Commonwealth in recognizing an independent tort of negligent retention.

In *Dixon v. Denny's, Inc.*, 957 F. Supp. 792 (E.D. Va. 1996), the Court noted that "[a]lthough Virginia has long recognized a cause of action for negligent hiring of employees, there appears to be a split of authority concerning the legitimacy of the tort of negligent retention under Virginia law." *Id.* at 797. Despite an obscure turn of the century precedent, *Big Stone Gap Iron Co. v. Ketron*, 102 Va. 23 (1903), which recognized a potential cause of action against an employer with notice of the incapacity of its employee surgeon but was never developed or cited in Virginia until *Johnson-Kendrick v. Sears, Roebuck & Co.*, 39 Va. Cir. 314 (1996), and despite several appearances of the phrase "negligent hiring or retention" in the charitable hospital cases, *supra*, the words "hiring" and "retention" appear historically to have been used interchangeably, leading the *Dixon* court to observe, "the Virginia Supreme Court has never interpreted the tort of negligent hiring to impose a duty on the employer beyond the initial hiring of an employee." 957 F. Supp. at 797. Indeed, in *Chesapeake and Pot. Tel. Co. of Va. v. Dowdy*, 235 Va. 55 (1988), the Supreme Court held that "[i]n Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances, and we will not create one here." *Id.* at 61.

In *Johnson-Kendrick*, the Circuit Court of the City of Norfolk "became the first court in Virginia to allow a negligent retention theory to go forward when it limited the holding of *Dowdy* to the facts of that case and overruled a demurrer: 'The court [in Dowdy] did not opine that there would never be a situation in which an employer would have a duty to supervise an employee'." *Id.* (citation omitted). Since then, two other decisions have recognized appropriate circumstances for recognizing the tort: *Berry v. Scott & Stringfellow and Woody Walker*, Law No. 97-3589 (March 27, 1998) (Circuit Court of the City of Norfolk); and *Courtney v. Ross Stores, Inc., and Shezed Sheikh*, Law No. 162716 (May 1, 1998) (Circuit Court of Fairfax County)

Recognizing that the structure of the annual registration process in this case may allow the tort of negligent hiring to fully address the direct negligence alleged against Defendants SJAC and BSA in the case at bar, the Court, nevertheless, finds that Reid's 1986 indictment for contributing to the delinquency of a minor following allegations of sexual assault on a scout

under his charge presents legitimate grounds for an independent cause of action regarding the possible negligence of SJAC and BSA in retaining Reid as scoutmaster of Troop 126, despite the fact that his trial resulted in acquittal.

## Conclusion

For the reasons set forth above, the Court sustains the Demurrers of Defendants SJAC and BSA as to all counts brought by Mr. and Mrs. Tremel but overrules Defendants' demurrers as to Michael Tremel's claims of negligent hiring and negligent retention.